UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BRANDON PURCELL, ET AL | CIVIL ACTION |
| VERSUS | NO: 16-1834 |
| TULANE UNIVERSITY OF LOUISIANA, ET AL | SECTION: "H"(3) |

## ORDER AND REASONS

Before the Court is a Motion to Dismiss filed by Defendants the Administrators of the Tulane Educational Fund ("Tulane"), Barbara Burke, Rick Dickson, Ruben Dupree, Wendy Stark, Erica Woodley, and Anne Banos (Doc. 48). Defendants Adam Hymel, Andrew Dirocco, Byron Ellis, Wayne Cordova, Rob Philips, Curtis Johnson, and Doug Lichtenberger have joined in this Motion (collectively, the "Moving Defendants"). Defendant Trevor Simms filed a late Motion for Joinder, and Defendant Peter Picerelli's has pending a Motion for Joinder (Doc. 98). For the following reasons, the Motion to Dismiss is **GRANTED IN PART** and the Motion for Joinder is **DENIED**.

## BACKGROUND

This lawsuit arises out of the circumstances surrounding Plaintiff Brandon Purcell's departure from the Tulane University football team. Purcell

1

enrolled at Tulane in the fall of 2013 and walked on to the football team as a kicker. He alleges that he suffers from a learning disability necessitating certain academic accommodations, including double time to take tests, sound-reduced environment, and a note taker. He states that due to his disability, he has better concentration in the morning. Accordingly, Defendant Ruben Dupree, the athletics academic advisor, approved him for 8:00 a.m. classes. This approval represented a departure from the general rule that Tulane football players should not take morning classes.

In the spring of 2015, Purcell was taking 8:00 a.m. classes five days a week. Nevertheless, he was scheduled for a training session from 7:00 a.m. to 8:30 a.m. He states that he would attend the initial portion of the workout, leave for his 8:00 a.m. classes and return to work with his coach after class to complete the missed portion of the workout. On March 4, 2015, Purcell avers that he was called into the office of special teams coach Doug Lichtenberger and was dismissed from the football team. He alleges that Coach Lichtenberger told Purcell that he was a "hindrance" and a "bad example for the team." Purcell then contacted Athletic Director Rick Dickson and Tulane Head Football Coach Curtis Johnson complaining of discrimination, hostile learning environment, retaliation, and intentional infliction of emotional distress. He alleges that Lichtenberger improperly used Purcell as an example of bad behavior, inciting other members of the football team to harass him and causing emotional distress.

Later in March of 2015, Brandon Purcell met with Assistant Athletic Director Barbara Burke, who indicated that he had been removed from the team because there were too many kickers. Plaintiffs contend that this reason is pretextual, as they allege that he outperformed other kickers who remained on the team. Plaintiffs later met with Tulane Athletic Director Rick Dickson,

demanding an explanation for Purcell's removal from the team. Dickson declined to intervene in the matter. Plaintiffs then met with Head Football Coach Curtis Johnson, Coach Rob Phillips, Coach Byron Ellis, and Coach Wayne Cordova to discuss the matter. Plaintiff alleges that they continued to assert pretextual reasons for his removal from the team.

After this meeting, Purcell was allowed to train with the team for the summer. He alleges that he suffered increased abuse and retaliation. He also alleges that his former friends and teammates participated in the abuse, making both physical threats and anti-Semitic comments toward Purcell. Plaintiff then filed a Complaint with Wendy Stark of Tulane's Office of Institutional Equity. Due to the reported increased retaliation, Stark began an independent investigation of the situation. He alleges that Stark failed to maintain confidentiality and participated in the conspiracy and cover up of the disability discrimination, hostile learning environment, retaliation, defamation, and intentional infliction of mental distress.

In the summer of 2015, Purcell alleges that his former friends and teammates Peter Picerelli, Michael Lizanich, Andrew Dirocco, and Trevor Simms engaged in a pattern of verbal abuse and threats inspired by Coach Lichtenberger. In response to these comments, Purcell met with Associate Athletic Director Sue Bower on August 14, 2015 and relayed his concerns to her. The following day, he alleges that Coach Johnson yelled at him during practice for speaking to Bower.

Plaintiff alleges that later in August he sustained a hip injury. He alleges that due to a miscommunication, he missed one of his two assigned treatment sessions for the injury. Despite this injury, he avers that Coach Lichtenberger forced him to remain in a push-up positions as punishment for missing treatment, further aggravating his injury. He alleges that strength

coach Adam Hymel also participated in this harassment, calling Purcell a "pussy."  Ultimately, Purcell alleges that he was forced to continue kicking in practice, further aggravating his injury.

On August 18, 2015, Purcell alleges that he was pulled aside by Lichtenberger, who demanded to know the names of the other players who were engaging in harassment.  Though Purcell initially stated that he did not want to name names, he ultimately named Steve Logan, Zachary Block, Peter Picerelli, Michael Lizanich, Andrew Dirocco, and Trevor Simms.  He was then directed to Coach Johnson's office.  Johnson then called in the above players and admonished them for their conduct directed at Purcell.  Purcell avers that this only placed a bigger target on his back.  The Tulane University Police Department subsequently investigated several of these students.  He avers that the pattern of harassment nevertheless continued unabated, causing Purcell to fear for his life.

On August 25, 2015, Purcell was called to Coach Johnson's office and was told that he was being removed from the team due to his injury.  Purcell avers that this reason is pretextual.  In September 2015 Purcell met with Erica Woodley, Wendy Stark, and  Vice President of Administrative Affairs Anne Banos.  Nothing was done following this meeting.  Subsequently, after speaking with Dean of Students James Maclaren, Purcell decided that it was best for his safety that he enroll in study abroad for the Spring 2016 semester.

As a result of this course of events, Purcell alleges that he has become depressed, missed classes, suffered academically, gained significant weight, sought physiological therapy, and left his family and friends for a study abroad program.  He brings claims under the Americans with Disabilities Act, the Rehabilitation Act, and Louisiana state law against Tulane University, Curtis Johnson, Doug Lichtenberger, Byron Ellis, Wayne Cordova, Rob Philips,

4

Barbara Burke, Rick Dickson, Ruben Dupre, Wendy Stark, Erica Woodley, Anne Banos, Andrew Dirocco, Trevor Simms, Michael Lizanich, and Peter Picerelli.  His parents, Ralph Purcell and Gail Purcell, also bring claims against these same defendants for loss of consortium.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."[1]  A claim is "plausible on its face" when the pleaded facts allow the court to "[d]raw the reasonable inference that the defendant is liable for the misconduct alleged."[2]  A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[3]  The Court need not, however, accept as true legal conclusions couched as factual allegations.[4]

To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[5]  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice.[6]  Rather, the complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim.[7]

---

[1] *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).
[2] *Id.*
[3] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).
[4] *Iqbal*, 556 U.S. at 667.
[5] *Id.*
[6] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).
[7] *Lormand*, 565 F.3d at 255–57.

## LAW AND ANALYSIS

The Moving Defendants have moved to dismiss the various claims asserted against them in Plaintiffs' Complaint. In the interests of efficiency, the Court will address each claim in the order it appears in the Complaint.

**I. First Cause of Action- Americans With Disabilities Act**

Plaintiffs have asserted a claim under the Americans with Disabilities Act ("ADA"). Plaintiffs have specifically invoked Title II of the ADA, which prohibits discrimination by public entities. Defendants argue that this claim must fail because Tulane University is not a public entity subject to Title II of the ADA. Plaintiffs respond, arguing that the reference to Title II is in error, and requesting leave to amend their complaint to assert a cause of action under Title III of the ADA, which governs place of public accommodation. In pertinent part, Title III provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.[8]

This section of the ADA applies to private schools, such as Tulane University.[9] In response, the Moving Defendants argue that the Complaint does not allege that the morning classes were offered as an academic accommodation. A plain reading of the Complaint belies this assertion. Plaintiffs allege that Ruben DuPree, Purcell's academic advisor, approved him for morning classes because he has better concentration in the morning hours and that this approval was granted despite the general rule that football players cannot take morning classes. The Court finds that he has alleged an

---

[8] 42 U.S.C.A. § 12182.
[9] 42 U.S.C.A. § 12181.

academic accommodation. Because it is undisputed that Title II of the ADA does not apply to this action, Plaintiff's ADA claims are dismissed; however the Court will grant Plaintiffs leave to amend their Complaint to properly assert these claims under Title III of the ADA.  Plaintiffs acknowledge that only Tulane may be held liable under the ADA.  As a result, the ADA claims against Tulane is dismissed without prejudice, and any ADA claims as to the other Defendants are dismissed with prejudice.

## II. Second Cause of Action- Rehabilitation Act

Plaintiffs next assert a cause of action under the federal Rehabilitation Act. "To establish a prima facie case under § 504 of the Rehabilitation Act a plaintiff must prove: (1) that []he is a qualified individual with a disability; (2) that []he was excluded from participation in, denied benefits of, or subjected to discrimination under the Defendant's program solely because of [his] disability; and (3) that the program in question receives federal financial assistance."[10]  The Moving Defendants contend that Plaintiffs have failed to allege that Purcell was a participant in a program or activity that receives federal financial assistance.  The Court has reviewed the Complaint and agrees.  Though Plaintiffs direct the Court to paragraph 151 of the Complaint, that paragraph contains nothing more than a recitation of the statutory language of the Rehabilitation Act.  "A pleading that offers 'a formulaic recitation of the elements of a cause of action'" will not suffice.[11]  Accordingly, Plaintiffs' claims under the Rehabilitation Act are deficient and must be dismissed.  The Court will, however, give Plaintiffs an opportunity to amend their complaint to the extent that they can correct this deficiency.  Plaintiffs acknowledge that only Tulane may be held liable under the Rehabilitation Act.

---

[10] *Ramos v. Louisiana Dep't of Health & Hosp.*, 08-0002, 2010 WL 4363957, at *3 (E.D. La. Oct. 25, 2010) (citing 29 U.S.C. § 794(a)).

[11] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

Accordingly, Plaintiffs' claims under the Rehabilitation Act against Tulane are dismissed without prejudice, and the claims against the remaining Defendants are dismissed with prejudice.

**III. Third Cause of Action- Louisiana Revised Statutes § 46:2254 et. seq**.

Plaintiffs next bring a cause of action under the Louisiana Civil Rights for Handicapped Persons Act. The Moving Defendants aver that this claim should be dismissed because Plaintiffs have not complied with the notice provisions of the statute, which provides:

> Any person who believes he has been discriminated against and intends to pursue court action must give the person who has allegedly discriminated written notice of this fact at least thirty days before initiating court action, must detail the discrimination and both parties must make a good faith effort to resolve the dispute before court action.[12]

There is limited jurisprudence interpreting the meaning of this notice provision. Courts that have interpreted the provision have consistently held "that a claim . . . must be dismissed if the plaintiff failed to comply with the notice provision, unless plaintiff had filed a charge of discrimination with the EEOC within the appropriate time period, which effectively accomplished the same goals as the statutory notice under state law."[13] "[T]he purposes of providing written notice are to allow them to preserve evidence and to facilitate the voluntary compliance and conciliation functions of the act."[14] Importantly, the notice provision provides that the aggrieved party must give notice of both the alleged discrimination and of his intent to pursue court action. Though Plaintiffs have alleged that they gave Defendants notice of the alleged

---

[12] La. Rev. Stat. § 46:2256.
[13] *Falgout-Loebig v. Rosbottom Employees, L.L.C.*, No. 04-3480, 2006 WL 1984684, at *10 (E.D. La. July 10, 2006).
[14] *Brown v. Menszer*, No. 99-0790, 2000 WL 1228769, at *2 (E.D. La. Aug. 23, 2000).

discrimination, they have not alleged that they gave Defendants notice of their intent to sue. Accordingly, Plaintiffs claims pursuant to the Louisiana Civil Rights for Handicapped Persons Act must be dismissed. The Court will, however, grant Plaintiffs leave to amend their complaint to the extent that they can correct this deficiency. Plaintiffs acknowledge that only Tulane may be held liable under the Louisiana Civil Rights for Handicapped Persons Act may only be asserted against Tulane. Accordingly, Plaintiffs' claims under the Louisiana Civil Rights for Handicapped Persons Act against Tulane are dismissed without prejudice, and the claims against the remaining Defendants are dismissed with prejudice.

## IV. Fourth Cause of Action- Louisiana Civil Code article 2315

Here, Plaintiffs generally allege that all Defendants are liable under Louisiana Civil Code article 2315 for negligence, defamation, and intentional infliction of emotional distress. Plaintiffs Gail and Ralph Purcell bring related loss of consortium claims. The court will address each of the tort allegations in turn.

### A. Negligence

In their Complaint, Plaintiffs broadly assert that "[a]s a result of the negligence of defendants, Brandon Purcell suffered both physical and mental injuries and his parents suffered loss of consortium." To prevail on a negligence claim under Louisiana law, a plaintiff must prove (1) that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries, (2) that the defendant had a duty to conform his conduct to a specific standard, (3) that the defendants conduct failed to conform to the appropriate standard, (4) that the defendant's substandard conduct was a legal cause of the plaintiff's injuries, and (5) that the plaintiff suffered actual damages.[15] Plaintiffs have not,

---

[15] *Perkins v. Entergy Corp.*, 782 So. 2d 606, 611 (La. 2001).

9

however, alleged facts sufficient to support a negligence cause of action as to any Defendant.  All of the facts described in the Complaint are alleged as intentional, not negligent, acts.[16]  Plaintiffs have failed to allege that a duty was owed by any Defendant, or that any breach of any such duty occurred.  Accordingly, dismissal of the negligence claims is warranted.  The Court will, however, give Plaintiffs leave to amend their complaint to the extent that they can plausibly state a claim for negligence against any defendant.  Plaintiffs' negligence claims against the Moving Defendants are dismissed without prejudice.

**B. Defamation**

Defendants next seek dismissal of Plaintiff's defamation claims.  Under Louisiana law,

> [f]our elements are necessary to establish a claim for defamation: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) [a] resulting injury. The fault requirement is generally referred to in the jurisprudence as malice, actual or implied.[17]

"[A] statement is defamatory if it tends to harm the reputation of another so as to lower the person in the estimation of the community, [or] deter others from associating or dealing with the person . . . ."[18] "[A]ny communication to a third party, absent a privilege, absolute or qualified, is considered a publication."[19]  "A pure statement of opinion usually is not actionable in

---

[16] *See Clinton v. Reigel By-Prod., Inc.*, 965 So. 2d 1006, 1009 (La. App. 2 Cir. 2007) ("[A]n act is considered intentional whenever it is shown that the defendant either 'consciously desired' the physical results of his conduct or was 'substantially certain' that those physical results would follow from his actions.").

[17] *Lorenzo v. State Farm Mut. Auto. Ins. Co.*, 983 F. Supp. 2d 852, 856 (E.D. La. 2013).

[18] *Kennedy v. Sheriff of E. Baton Rouge,* 935 So. 2d 669, 674 (La. 2006).

[19] *Carlisle v. Sotirin*, No. 04-1549, 2005 WL 78938, at *5 (E.D. La. Jan. 11, 2005) (quoting *Costello v. Hardy*, 864 So.2d 129, 142 (La. 2004)).

10

defamation because falsity is an indispensable element of any defamation claim, and a purely subjective statement can be neither true nor false."[20]

Plaintiffs allege that statements by Coach Lichtenberger, Coach Byron Ellis, Coach Hymel, and Dirocco were defamatory. The Court will address each Defendant separately.

### 1. *Lichtenberger*

Plaintiff alleges that Defendant Lichtenberger defamed him by using Purcell as an example of a poor player, telling his teammates that he did not put in as much work as other players, and telling them that it was not fair to them for someone like Purcell to continue on the team. Plaintiff also alleges that Lichtenberger defamed him by telling others that he thought Purcell was the worst kicker on the team. Despite Plaintiffs' apparent disagreement with Lichtenberger's assessments, these statements reflect nothing more than his purely subjective opinions regarding Purcell's performance and his place on the team. Accordingly, these statements are not defamatory and Plaintiffs' defamation claims against Lichtenberger must be dismissed. The Court will, however, give Plaintiffs leave to amend their complaint to the extent that they can plausibly state a claim for defamation against Lichtenberger.

### 2. *Ellis*

Plaintiffs allege that Coach Ellis defamed Purcell when he told other players on the team that it was Purcell who had emailed the police to investigate them. Defendants argue that Plaintiffs have failed to properly plead a cause of action in defamation as to Defendant Ellis because they fail to allege that Ellis made the statement with the requisite degree of fault. This Court agrees. Though Plaintiffs allege that Ellis's statement was untrue, they

---

[20] *Sanders v. Dillard Univ.*, No. 14-845, 2014 WL 7342440, at *8 (E.D. La. Dec. 23, 2014).

make no allegations concerning whether Ellis knew that his statement was true or false. Accordingly, Plaintiffs' allegations of defamation as to Ellis are deficient and must be dismissed. The Court will, however, give Plaintiffs leave to amend their complaint to the extent that they can plausibly state a claim for defamation against Ellis.

### 3. Hymel

Plaintiffs allege that Coach Hymel defamed Purcell when he called him a "pussy." Plaintiff asserts, without citation, that referring to Purcell by the name of a female body part is defamatory per se. The Court disagrees. A key element of defamation is that the statement alleged to be defamatory must be factual in nature.[21] "[An] opinion may be ostensibly in the form of a factual statement if it is clear from the context that the speaker did not intend to assert another objective fact but only his personal comment on the facts which he had stated."[22] Though Coach Hymel's comments, as alleged, are certainly vulgar and unprofessional, it is clear from the context that he was merely relaying his opinion regarding Purcell's attitude and commitment to the team. No reasonable person would belief that Purcell was actually a female body part; accordingly, the statement is not defamatory. Accordingly, Plaintiffs' allegations of defamation against Hymel must be dismissed. The Court will, however, give Plaintiffs leave to amend their complaint to the extent that they can plausibly state a claim for defamation against Hymel.

### 4. Dirocco

Plaintiffs further allege that Defendant Andrew Dirocco engaged in defamatory conduct by (1) participating in a conversation whereby he stated that he and other members of the football team would aim at Purcell if they

---

[21] *Thompson v. Lee,* 888 So. 2d 300, 304 (La. App. 2 Cir. 2004), writ denied, 893 So. 2d 873 (La. 2005).
[22] *Id.*

12

took him hunting and (2) by participating in a course of conduct whereby he and other members of the football team mocked Purcell for being Jewish.  This conduct, though certainly crass and uncivilized, does not give rise to a cause of action for defamation.  Plaintiffs point to no false assertion of fact by Dirocco.  Accordingly, Plaintiffs' defamation claims against this defendant must be dismissed.  The Court will, however, give Plaintiffs leave to amend their complaint to the extent that they can plausibly state a claim for defamation against Dirocco.

### C. Intentional Infliction of Emotional Distress

Defendants next seek dismissal of Plaintiffs' Intentional Infliction of Emotional Distress claims.  Based on the language of the Complaint, it appears that such claims are directed at Defendants Lichtenberger and Dirocco.  Under Louisiana law,

> in order to recover for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.  The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.  Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.[23]

A plaintiff has a "heavy burden" in proving that the conduct at issue was sufficiently outrageous.[24]  "Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that

---

[23] *White v. Monsanto*, 585 So.2d 1205, 1209 (La. 1991).
[24] *Boquet v. Belanger*, No. 14-2228, 2015 WL 1650255, at *6 (E.D. La. Apr. 14, 2015).

13

are definitely inconsiderate and unkind."[25] The conduct at issue "must be intended or calculated to cause severe emotional distress, not just some lesser degree of fright, humiliation, embarrassment or worry."[26] "There is no occasion for the law to intervene in every case where some one's feelings are hurt."[27] "The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind."[28] Defendants argue that Plaintiffs have failed to meet the burden of proving that their conduct was sufficiently outrageous.

### 1. Tulane Coaching Staff

Plaintiffs allege that the behavior of the Tulane coaching staff, particularly Coach Lichtenberger, was extreme and outrageous conduct intended to inflict severe emotional distress, and that Purcell did indeed suffer severe emotional distress. Plaintiffs allege that Lichtenberger did not believe that Purcell was disabled, required him to prove his disability, disregarded his accommodation, kicked him off the football team, and taunted him. Plaintiffs further allege that Lichtenberger's actions prompted the other players to become abusive toward Purcell. The Court has reviewed the allegations of the Complaint and finds that the conduct described therein is not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."[29] Particularly in the context of athletics, a certain amount of rough language is expected, and feelings may be hurt when decisions are made

---

[25] *White*, 585 So.2d at 1209.
[26] *Nicholas v. Allstate Ins. Co.*, 765 So.2d 1017 (La. 2000).
[27] Restatement (Second) of Torts § 46 (1965).
[28] *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 514 (5th Cir. 1994).
[29] *White*, 585 So.2d at 1209.

to cut players from the team. The conduct described in the complaint, though certainly inconsiderate and unkind, does not give rise to a cause of action for intentional infliction of emotional distress, even construed in the light most favorable to the Plaintiffs. Indeed, Louisiana courts have declined to impose liability for intentional infliction of emotional distress in cases more extreme than the situation presented here.[30] Accordingly, all claims of intentional infliction of emotional distress against Tulane and its employees are dismissed. The Court will, however, give Plaintiffs leave to amend their complaint to the

---

[30] *Nicholas v. Allstate Ins. Co.*, 765 So. 2d 1017, 1027 (La. 2000) ("*See, e.g.*, the following cases which failed to establish facts sufficient to constitute the intentional infliction of emotional distress: *Smith v. Ouachita Parish Sch. Bd.,* 29,873 (La. App. 2 Cir. 9/24/97), 702 So.2d 727, writ denied, 97-2721 (La.1/16/98), 706 So. 2d 978 (holding that the wrongful demotion and transfer of a teacher within the school system, though causing emotional and psychological distress, did not constitute extreme and outrageous conduct); *Stewart v. Parish of Jefferson*, 95-407 (La. App. 5 Cir. 1/30/96), 668 So. 2d 1292, writ denied, 96-0526 (La.4/8/96), 671 So.2d 340 (holding that intentional infliction of emotional distress was not shown, even though a supervisor maintained two-year's harassment  **15 in which he questioned the worker's personal life, increased the workload, and pressured the employee to accept a demotion which ultimately led to the employee's termination); *Beaudoin v. Hartford Acc. & Indem. Co.*, 594 So.2d 1049 (La. App. 3 Cir.), writ denied, 598 So.2d 356 (La.1992) (holding that even if the employee felt singled out for abuse, a supervisor's eight-month undertaking in which he shouted at an employee, cursed her, called her names (dumb, stupid, and fat), commented about the inferiority of women, and falsely accused her of making mistakes did not constitute extreme and outrageous conduct); *Deus v. Allstate Ins. Co.*, 15 F.3d 506 (5th Cir.), cert. denied, 513 U.S. 1014, 115 S.Ct. 573, 130 L.Ed.2d 490 (1994) (holding that employer may call upon an employee to do more than others, use special review on particular employees and not others to downgrade performance, institute long term plan to move younger persons into sales and management positions without engaging in extreme and outrageous conduct); *Trahan v. Bellsouth Tel., Inc.*, 881 F. Supp. 1080 (W.D. La.), aff'd, 71 F.3d 876 (5th Cir.1995) (holding that employers use of a security team to ridicule, tease, and taunt plaintiff for seven and one-half hours questioning was not conduct which was outrageous); *Glenn v. Boy Scouts of America*, 977 F. Supp. 786 (W.D.La.1997) (holding that telling an employee that she was rumored to have had a sexual affair with a prior scout executive, being told that her placement next to a donor who liked her was because she might get more money from him, communication to her that he did not want a woman in her position, being called a total disgrace in a staffing meeting after she successfully completed her probationary period, and being told that she would be terminated on an undisclosed volunteer complaint unless she voluntarily resigned, did not constitute extreme and outrageous conduct).").

extent that they can plausibly state a claim for intentional infliction of emotional distress.

### 2. Dirocco

Plaintiffs bring a claim of intentional infliction of emotional distress against Defendants Andrew Dirocco, Trevor Simms, Michael Lizanich, and Peter Picerelli, Purcell's former teammates. At this time, only Dirocco has timely moved for dismissal of the claims against them. Plaintiffs' intentional infliction of emotional distress claim against Dirocco is based in part on his participation in the following conversation:

> On one occasion, Peter Picerelli asked me, "Do you want to go hunting with us." In response, Lizanich said "we will aim at you" and Dirocco confirmed with a "yeah."

Plaintiffs argue that Purcell feared for his life following this conversation because Dirocco had previously bragged about having a gun on campus. He also alleges intentional infliction of emotional distress based on Dirocco's participation in a text group called "Purcell Haters" and his improper comments related to Purcell's Jewish faith. Like the allegations against the Tulane coaching staff, this behavior, though insensitive, is insufficiently outrageous to give rise to a claim for intentional infliction of emotional distress. The conversation regarding hunting is the only direct allegation of the complaint that could plausibly be construed as a threat against Purcell. Even looking at this conversation in the light most favorable to the Plaintiffs, the Court concludes that such an isolated comment, particularly among former football teammates, is insufficient to give rise to a cause of action for intentional infliction of emotional distress.[31] With regard to the comments

---

[31] *King v. Bryant*, 822 So. 2d 214, 217 (La. App. 3 Cir. 2002), , writ denied, 829 So. 2d 1046 (La. 2002) ("[T]his state's jurisprudence has limited the cause of action to cases which involve a pattern of deliberate, repeated harassment over a period of time.").

16

regarding Purcell's Jewish faith, these comments are just the type of "insults, indignities, threats, annoyances, petty oppressions, or other trivialities" that the Louisiana Supreme Court has cautioned do not rise to an actionable level.[32] Accordingly, Plaintiffs' claims against Dirocco for intentional infliction of emotional distress are dismissed.

**V. Loss of Consortium Claims**

Plaintiffs Gail and Ralph Purcell, the parents of Defendant Brandon Purcell, bring loss of consortium claims relative to the claims asserted by Plaintiff Brandon Purcell. Defendants argue that (1) loss of consortium damages are unavailable as a matter of law with regard to Plaintiffs' ADA, Rehabilitation Act, and Louisiana Civil Rights for Handicapped Persons Act claims, and (2) that the loss of consortium claims related to any dismissed state law tort claims should be dismissed. The Court agrees with Defendants on both counts.

It is well established that a plaintiff who claims a deprivation of rights must prove some violation of his or her personal rights.[33] The loss of consortium claims relative to the ADA, the Rehabilitation Act, and the Louisiana Civil Rights for Handicapped Persons Act fail because Plaintiffs Gail and Ralph Purcell can point to no violation of their personal rights. Indeed, other Courts have noted that neither the ADA nor the Rehabilitation Act give rise to a claim for loss of consortium.[34] It follows, therefore, that a loss of

---

[32] *White*, 585 So.2d at 1209.
[33] *Coon v. Ledbetter*, 780 F.2d 1158, 1160 (5th Cir. 1986).
[34] *Cook v. Waters*, No. 96–1459–CIV–T–17E, 1996 WL 685842, at *1, *1 (M.D.Fla. Nov.13, 1996) ("Specifically, loss of consortium claims have been held not to be derivative of an ADA claim or a Title VII claim."); *Miller v. CBC Cos.*, 908 F. Supp. 1054, 1069 (D.N.H.1995) (granting motion to dismiss consortium claims to the extent they derived from ADA and Title VII claims); *Mohamed v. Marriot Int'l, Inc.*, 905 F. Supp. 141, 159 (S.D.N.Y. 1995) (granting motion to dismiss consortium claim because it could not attach to an ADA claim). *See also* 42 U.S.C. 12133 (stating that the remedies available under the ADA are coextensive with the remedies available under the Rehabilitation Act).

consortium claim is also unavailable under the Louisiana Civil Rights for Handicapped Persons Act, as Louisiana courts routinely look to the federal courts' interpretation of the ADA and the Rehabilitation Act for persuasive guidance in analyzing state law discrimination claims.[35] Any loss of consortium claims stemming from Plaintiffs' first three causes of action are therefore dismissed with prejudice.

With regard to the Louisiana state law tort claims, loss of consortium is a "secondary layer of tort liability and derivative from the injury to the primary victim."[36] The Court, having dismissed the underlying tort claims against the Moving Defendants, must therefore also dismiss the related loss of consortium claims against these Defendants.

## VI. Motion to Dismiss as to Picerelli and Simms

Pending before the Court is a Motion for Joinder filed by Defendant Peter Picerelli. The Court also previously granted Defendant Trevor Simms leave to join in the Moving Defendants' Motion to Dismiss. These Defendants have, however, previously answered Plaintiffs' Complaint. Accordingly their request for relief pursuant to Rule 12(b)(6) is untimely.[37] Accordingly, the Motion to Dismiss is denied as to Trevor Simms and Peter Picerelli's Motion for Joinder is denied.

## CONCLUSION

For the forgoing reasons, the Motion to Dismiss is **GRANTED IN PART**. Plaintiffs' claims against the Moving Defendants are **DISMISSED WITHOUT PREJUDICE**, except as otherwise specifically noted. The Motion

---

[35] *Crocker v. City of Kenner,* 2002 WL 31115255, at *5 (E.D. La. Sept. 23, 2002).
[36] *Brock v. Singleton*, 65 So. 3d 649, 657 (La. App. 5 Cir. 2011), writ denied, 69 So. 3d 1160 (La. 2011).
[37] § 1361Timing of Rule 12(b) Motions, 5C Fed. Prac. & Proc. Civ. § 1361 (3d ed.).

is **DENIED** as untimely with respect to Defendant Trevor Simms. Plaintiffs are given leave to amend their complaint within 21 days of the entry of this Order to the extent that they can remedy the deficiencies outlined herein.

  **IT IS FURTHER ORDERED** that Defendant Picerelli's Motion for Joinder is **DENIED**.

  New Orleans, Louisiana this 9th day of November, 2016.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**