UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BRANDON PURCELL, ET AL.                                CIVIL ACTION

VERSUS                                                 NO: 16-1834

TULANE UNIVERSITY OF                                   SECTION: "H"
LOUISIANA, ET AL.

## ORDER AND REASONS

Before the Court is Defendants' Motion for Summary Judgment (Doc. 199). For the following reasons, the Motion is **GRANTED**.

## BACKGROUND

This lawsuit arises out of the circumstances surrounding Plaintiff Brandon Purcell's departure from Tulane University's football team in 2015. Purcell, a kicker, claims he was cut from the team because of his learning disability in violation of federal and state law. Defendants respond that Purcell was in fact cut because, among other reasons, he was simply not a good football player.

1

Plaintiffs, who include Purcell's parents, filed this lawsuit on March 3, 2016.[1] Plaintiffs' Complaint included numerous claims against numerous defendants.[2] Since then, this Court has twice granted in part Motions to Dismiss filed by defendants in this action.[3] The only remaining Defendants include the Administrators of the Tulane Educational Fund ("Tulane"), which was incorrectly designated as "the Tulane University of Louisiana," and Byron Ellis, Tulane's Director of Football Operations. The claims that remain against Tulane include alleged violations of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and the Louisiana Civil Rights Act for Persons with Disabilities. The remaining claims against Ellis include a Louisiana state law defamation claim by Brandon Purcell and associated state law loss of consortium claims by his parents.

On October 4, 2018, Defendants Tulane and Ellis filed this Motion for Summary Judgment pertaining to all Plaintiffs' remaining claims.[4] Plaintiffs oppose.[5] This Court will analyze the claims remaining against Tulane before turning to those pending against Ellis.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6] "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will

---

[1] Doc. 1.
[2] *See id.*
[3] *See* Docs. 100, 150.
[4] *See* Doc. 199.
[5] *See* Doc. 207.
[6] Fed. R. Civ. P. 56.

2

properly preclude the entry of summary judgment."[7] Nevertheless, a dispute about a material fact is "genuine" such that summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[8]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[9] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[10] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[11]

"In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial."[12] The Court does "not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[13] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[14]

---

[7] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[8] *Id.* at 248.
[9] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997).
[10] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[11] Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
[12] Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[13] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 393–94 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[14] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

# LAW AND ANALYSIS

## I. Americans with Disabilities Act Claims

Plaintiffs concede that they lack standing to pursue their claims against Tulane under Title III of the ADA.[15] As such, those claims are dismissed with prejudice.

## II. Rehabilitation Act Claims

Section 504 of the Rehabilitation Act prohibits discrimination against qualified individuals with disabilities.[16] The statute provides,

> No otherwise qualified individual with a disability in the United States … shall, *solely by reason of her or his disability*, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.[17]

The Act defines an "individual with a disability" as "any individual who has a physical or mental impairment which for such individual constitutes or results in a substantial impediment to employment."[18] The Act further defines "program or activity" to include "all the operations of . . . a college, university, or other postsecondary institution."[19]

For purposes of this Order and Reasons, this Court will assume that Purcell's learning disability qualifies him for protection under the Rehabilitation Act and that Tulane qualifies as a program under the Act from which Purcell cannot be excluded based on his disability.[20] The question, then,

---

[15] *See* Doc. 209 at 3.
[16] *See* 29 U.S.C. § 794.
[17] *Id.* § 794(a) (emphasis added).
[18] *Id.* § 705(20).
[19] *Id.* § 794(b)(2)(A).
[20] Defendant Tulane does not argue that Plaintiff Brandon Purcell is not an individual with a disability for purposes of the Act.

4

is whether Tulane violated the Act when it released Purcell from its football team.

Purcell alleges that Tulane violated the Act in three distinct ways. First, he claims that Tulane discriminated against him because of his disability when he was cut from the football team in March 2015, subsequently reinstated, and then cut again in August 2015. Second, Purcell claims that Tulane allowed a hostile environment to flourish because "Purcell was subjected to harassment as a result of complaining about discrimination."[21] Third, and finally, Purcell claims Tulane retaliated against him by cutting him from the team a second time after Purcell complained to the university that he was cut the first time because of his disability.[22] The Court will analyze each claim separately.

### a. Disability Discrimination Claim

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, *solely by reason of her or his disability*, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."[23] Accordingly, to succeed on a discrimination claim under the Act, a plaintiff must show that he suffered discrimination *solely* because of his disability.

Brandon Purcell was twice cut from Tulane's football team, first in March 2015 and then again in August 2015. In the spring of 2015, Purcell scheduled morning classes. He testified that he scheduled classes in the morning to accommodate for his learning disability. Because Purcell scheduled morning classes, he missed spring football practices, which were held in the

---

[21] *See* Doc. 209 at 13.
[22] *See* Doc. 209.
[23] 29 U.S.C. § 794(a) (emphasis added).

5

mornings. Purcell testified that when he was cut in March of 2015, Special Teams Coach Doug Lichtenberger told him it was because he missed too many practices. Therefore, Purcell argues, he lost his spot on the team solely because of his disability. He argues that any other reasons Tulane cited as justification for cutting Purcell are merely pretextual.

Plaintiffs' argument suffers from fatal flaws. At the outset, this Court notes that Purcell's disability accommodation plan did not mandate that he take morning classes.[24] He in fact took many afternoon classes throughout his education at Tulane, eventually graduating with a 3.6 cumulative GPA.[25] Purcell even testified that he "never declared that [he] could only take morning classes."[26] Further, Coach Lichtenberger testified that he did not even know about Purcell's disability when he cut Purcell from the team in March 2015.[27] Head Coach Curtis Johnson testified similarly that he did not know what Purcell's disability was or what accommodations he received, only that he knew Purcell received accommodations.[28]

Even if Lichtenberger and Johnson both *knew* about Purcell's disability before he was cut, no evidence aside from Plaintiffs' own testimony suggests the coaches dismissed him *because of* his disability. Plaintiffs' argument ignores the testimony by the Tulane coaches that Purcell simply was not a good football player. Lichtenberger testified that the reason Purcell was cut "[m]ostly had to do with his ability."[29] He also testified that Purcell "was not a Division I kicker" and that "[he] did not have the skills of an FBS level

---

[24] *See* Doc. 199-5 at 12.
[25] *Id.* at 15.
[26] *Id.* at 45.
[27] Doc. 199-8 at 48.
[28] *See* Doc. 199-9 at 32.
[29] Doc. 199-8 at 56.

6

kicker."[30] Coach Johnson testified that "[m]y biggest problem was [Purcell] could not kick the ball that was snapped and set on the tee in a timely manner. He couldn't do it."[31] Johnson further testified that Purcell "couldn't kick the ball in a timely manner and get it through the upright. . . . and he couldn't play a receiver, or he couldn't play a running back, [so] he had little value."[32] Put succinctly, the coaches testified that Brandon Purcell was not a good football player.

Plaintiffs fail to produce any evidence besides self-serving testimony to counter testimony by the coaches that Purcell was not a good football player.[33] A lack of ability certainly qualifies as a non-discriminatory reason to cut a kicker from a football team. Thus, Purcell cannot carry his burden of proof to show that he was released solely because of his disability.[34]

It is not for this Court to decide whether Coach Lichtenberger should have told Purcell every reason that he was being cut from the beginning. Instead, it is this Court's duty to determine whether Plaintiffs produced evidence aside from self-serving testimony to counter Defendants' overwhelming evidence that Purcell was not released solely because of his disability. Plaintiffs have not done so.

---

[30] *Id.* at 45. Tulane's football team competes in Division I of the Football Bowl Subdivision (FBS) of the NCAA, which is the highest level of college football in the United States.
[31] Doc. 199-9 at 25.
[32] *Id.*
[33] *See* Vinewood Capital, LLC v. Dar Al-Maal Al-Islami Tr., 541 F. App'x 443, 447 (5th Cir. 2013) ("[A] a party's uncorroborated self-serving testimony cannot prevent summary judgment.").
[34] The Court also notes that Coach Johnson testified that another reason Purcell was cut was because the football team had too many kickers, and because the team could only have so many players by rule, he needed to cut Purcell to make room for players at other positions. *See* Doc. 215-1 at 4, 5, 9. Plaintiffs failed to produce any evidence aside from self-serving testimony to counter Johnson's assertion. This serves as further proof that Purcell was not cut solely because of his disability.

Regarding Purcell's post-reinstatement release in August 2015, the coaches testified that all the same problems persisted after his reinstatement, except that in the fall Purcell also suffered an injury that prevented him from practicing. Because there were too many kickers on the team, Purcell was not among the best, and he could not practice due to his injury, they cut him again. None of these reasons represent disability-based discrimination. Plaintiffs therefore have not shown that Purcell was cut either the first or second time solely because of his disability.

### b. Hostile Environment Claim

To establish a hostile environment claim under Section 504 of the Rehabilitation Act, a plaintiff must show:

> (1) he was an individual with a disability, (2) *he was harassed based on his disability*, (3) the harassment was sufficiently severe or pervasive that it altered the condition of his education and created an abusive educational environment, (4) [defendant] knew about the harassment, and (5) *[defendant] was deliberately indifferent to the harassment*.[35]

Even assuming Purcell qualifies as a disabled individual protected by the Act, Plaintiffs have failed to provide evidence showing Purcell was harassed based on his disability. Plaintiffs submit evidence showing that Purcell was sent harassing messages because of his Jewish religion, because he involved his family in his school-related grievances, and for other reasons completely unrelated to Purcell's learning disability.[36] No evidence suggests Purcell was harassed based on his learning disability. Further, Plaintiff cannot show that Tulane was deliberately indifferent to the alleged harassment. Tulane coaches and administrators met with Brandon Purcell and his parents on numerous

---

[35] Estate of Lance v. Lewisville Indep. Sch. Dist., 743 F.3d 982, 996 (5th Cir. 2014) (quoting S.S. v. E. Kentucky Univ., 532 F.3d 445, 454 (6th Cir. 2008)) (emphasis added).
[36] *See* Doc. 199-7 at 51–61.

8

occasions throughout 2015. Tulane's Office of Institutional Equity conducted an investigation and issued a report regarding Purcell's complaints to the university. Tulane's Division of Student Affairs and the Tulane Police Department also were involved. These facts show that Tulane's response to Purcell's complaints was not "clearly unreasonable in light of the known circumstances."[37] Thus, Plaintiff has failed to produce evidence sufficient to create a genuine dispute of material fact as to whether Purcell was harassed based on his disability and as to whether Tulane was deliberately indifferent to Purcell's complaints of harassment. This claim fails as a matter of law.

### c. Retaliation Claim

To establish a prima facie case of retaliation under the Rehabilitation Act, a plaintiff must show: (1) he engaged in a protected activity; (2) the defendant took an adverse action against him; and (3) a causal connection existed between the adverse action and the protected activity.[38] "Once a plaintiff has established a prima facie case of retaliation, the burden shifts to the defendant to show that it had a legitimate nondiscriminatory reason for taking the adverse . . . action."[39] "If the defendant provides a legitimate nondiscriminatory reason for the [adverse] action, the burden shifts back to the plaintiff to show that the adverse action would not have occurred 'but for' the protected activity."[40]

Here, Purcell alleges that he engaged in protected activity by complaining that he was initially cut from the football team because of his disability, that the "adverse action" following that protected activity was getting cut a second time in August 2015, and that the two are causally

---

[37] *Estate of Lance*, 743 F.3d at 996.
[38] Calderon v. Potter, 113 F. App'x 586, 592 (5th Cir. 2004).
[39] *Id.*
[40] *Id.* (quoting Long v. Eastfield Coll., 88 F.3d 300, 308 (5th Cir. 1996)).

9

connected. Even assuming that Plaintiff has presented a prima facie case of retaliation, Tulane has submitted substantial evidence that Purcell was cut from the team in August 2015 for non-retaliatory reasons.[41] Purcell has failed to provide evidence that the second cut would not have occurred but for Purcell's complaints about his initial cut. As such, Tulane is entitled to summary judgment on this claim.

### III. Louisiana Discrimination Claims

The Louisiana Civil Rights Act for Persons with Disabilities provides legal recourse for people who suffer discrimination as a result of a disability.[42] Under the Act,

> Any person who believes he has been discriminated against and intends to pursue court action shall give the person who has allegedly discriminated written notice of this fact at least thirty days before initiating court action and shall detail the discrimination, and both parties shall make a good faith effort to resolve the dispute before court action.[43]

Thus,

> [D]iscrimination claims under Louisiana state law require a plaintiff to satisfy two requirements prior to filing suit. First, the plaintiff must give the [defendant] written notice of the intent to sue at least 30 days prior to filing suit. Second, both parties are required to make a good faith effort to resolve the claim before a plaintiff files suit. Failure to comply with either requirement is grounds for dismissing the claim as premature.[44]

---

[41] *See* Doc. 199-9 at 33.
[42] LA. REV. STAT. §§ 46:2251–56.
[43] *Id.* § 2256(B).
[44] Pearson v. IHOP, No. 09-3071, 2010 WL 971798, at *5 (E.D. La. Mar. 10, 2010) (internal citation omitted). *See also* Falgout-Loebig v. Rosbottom Employees, L.L.C., No. 04-3480, 2006 WL 1984684, at *10 (E.D. La. July 10, 2006) (collecting cases) (noting that "courts have consistently held that a claim under [the] statute must be dismissed if [a] plaintiff failed to comply with the notice provision").

Plaintiffs filed suit on March 3, 2016.[45] Therefore, to comply with the notice requirements of Louisiana Revised Statutes § 46:2256, Plaintiffs must have provided written notice to "the person who . . . allegedly discriminated" no later than February 2, 2016.[46]

Plaintiffs point to two writings to support their contention that they satisfied the notice requirement.[47] The first is a July 9, 2015 email sent by Brandon Purcell's parents to Tulane President Michael Fitts.[48] Nothing in this email, however, evinces an intent to sue. It simply shows that the Purcells reached out to a Tulane official about their son's woes. The second writing referred to by Plaintiffs is a September 25, 2015 email sent by Brandon Purcell to Anne Baños, a Tulane administrator.[49] In the email, Purcell outlines in detail his grievances with the university's handling of his complaints. Purcell refers to "direct retaliation against" him, "improper retaliation," that he is a "victim of discrimination over a disability" who "suffered ongoing and progressive retaliation," and that it was "not easy or convenient for [him] to take this stand."[50] Although such language certainly hints at a subjective belief that one's legal rights have been violated, it does not represent written notice of an intent to sue. The email, in fact, was written in response to a request by Tulane, and it was meant to help Tulane resolve Brandon Purcell's grievances internally.[51]

---

[45] Doc. 1.
[46] *See* LA. REV. STAT. § 46:2256(B).
[47] *See* Doc. 209 at 4–6. Plaintiffs also argue that a meeting between them and a handful of Tulane officials satisfied the notice requirement. *See id.* at 4–5. But a meeting does not constitute "written notice," and it is thus insufficient to satisfy the statute's notice requirement.
[48] Doc. 199-6 at 6–7.
[49] Doc. 199-7 at 3–13.
[50] Doc. 199-7.
[51] *See id.*

The plain language of the statute clearly requires written notice of an intent to pursue court action before filing suit.[52] Plaintiffs here failed to comply with this statutory directive. Therefore, their claims under the Louisiana Civil Rights Act for Persons with Disabilities must fail.

## IV. Defamation and Loss of Consortium Claims

Brandon Purcell alleges that his former teammates—Peter Picerelli, Trevor Simms and Michael Lizanich—harassed and threatened him after he was cut from Tulane's football team.[53] Tulane police eventually questioned all three men. Later on, Defendant Byron Ellis allegedly told the three men that it was Brandon Purcell who contacted police with complaints that led to the trio being questioned.[54] In fact, it was Erica Woodley who contacted police by forwarding an email to them that she had received from Susan Bowers, another Tulane official, in which Bowers outlined complaints she received directly from Purcell.[55] No evidence suggests Purcell ever contacted police directly about the alleged harassment. Thus, Purcell claims Ellis defamed him by allegedly telling Picerelli, Simms, and Lizanich that Purcell had contacted police when in fact he never did so.

"[O]n a motion for summary judgment, the evidence proffered by the plaintiff to satisfy his burden of proof must be competent and admissible at trial."[56] Under the Federal Rules of Evidence, the general rule is that hearsay is inadmissible.[57] The Rules define hearsay as an out-of-court statement by a

---

[52] *See* LA. REV. STAT. § 46:2256(B).
[53] *See* Doc. 103.
[54] *See id.* at 33.
[55] *See* Doc. 199-6 at 80–81.
[56] Bellard v. Gautreaux, 675 F.3d 454, 460 (5th Cir. 2012) (citing Martin v. John W. Stone Oil Distributor, Inc., 819 F.2d 547, 549 (5th Cir. 1987)).
[57] FED. R. EVID. 802.

12

declarant offered to prove the truth of the matter asserted in the declarant's statement.[58]

Here, the only evidence of Ellis's alleged defamation is testimony by Brandon Purcell that a non-party, Picerelli, told Purcell that Ellis told Picerelli, Simms, and Lizanich that it was Purcell who contacted police directly about the alleged harassment of Purcell.[59] This is "textbook hearsay."[60] Purcell is "trying to admit evidence of his own recollection of what someone else said in a conversation with him."[61] "This is hearsay and does not fit any hearsay exceptions."[62] As such, Purcell has produced no admissible evidence to support his defamation claim against Ellis, and the claim fails as a matter of law.

The parties agree that the only remaining claim in this suit by Ralph and Gail Purcell is one for loss of consortium in connection with Brandon Purcell's defamation claim.[63] This Court has already recognized that loss of consortium is a "secondary layer of tort liability and derivative from the injury to the primary victim."[64] Because this Court dismisses Brandon Purcell's defamation claim against Ellis, the loss of consortium claim by Ralph and Gail Purcell also must fail.

---

[58] FED. R. EVID. 801(c).
[59] *See* Doc. 199-2 at 3. It is worth noting that Brandon Purcell's September 25, 2015 letter to Anne Baños suggests there was yet *another* layer of hearsay in the sequence of conversations. In that letter, Purcell wrote, "Later I was told by another one of my teammates that Picerelli had told him that Byron told the three questioned by the cops that it was I who had emailed the police in the first place." Doc. 199-7 at 11.
[60] *Bellard*, 675 F.3d at 461 (holding that the plaintiff's testimony about what a non-party told the plaintiff about a conversation the non-party had with the defendant constituted "textbook hearsay").
[61] *Id.*
[62] *Id.*
[63] *See* Docs. 199-2 at 2, 209-1 at 2.
[64] Doc. 150 at 17 (quoting Brock v. Singleton, 65 So. 3d 649, 657 (La. App. 5 Cir. 2011)).

## CONCLUSION

For the foregoing reasons, there is no genuine dispute as to any material fact, and Defendants are entitled to judgment as a matter of law. Therefore, all Plaintiffs' claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana this 17th day of December, 2018.

_____
**JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE**